IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TENNESSEE
                           WESTERN DIVISION

_____

JOSEPH SHANLEY,                    )
                                   )
     Plaintiff,                    )
                                   )
vs.                                )      No. 07-2334-MlV
                                   )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
     Defendant.                    )
_____

                    REPORT AND RECOMMENDATION
_____

Plaintiff, Joseph Shanley, appeals from a decision of the Commissioner of Social Security ("Commissioner") denying his claims under the Social Security Act ("the Act") for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 *et seq.* and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* In his brief, Shanley argues that the administrative law judge ("ALJ") erred in determining Shanley's severe impairments, erred by making only summary conclusions supporting his findings, and improperly evaluated the medical evidence in the record. Shanley also requests a remand for consideration of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). The appeal was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, it is

recommended that the case be remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g).

PROPOSED FINDINGS OF FACT

A.  Procedural History

On December 29, 2004, Shanley applied for SSI, and on January 6, 2005, he applied for disability benefits. (R. at 15, 31, 136-44.) Shanley alleged that his disability commenced on February 1, 2001. (R. at 15.) Shanley's claims were denied initially on June 23, 2005, and again upon reconsideration on September 19, 2005. (R. at 15.) Shanley requested and was granted a hearing, which was held before ALJ Sheldon Zisook on August 31, 2006. (R. at 148.)

On October 21, 2006, the ALJ issued an unfavorable decision denying Shanley's requests for SSI and disability benefits because Shanley was not under a disability as defined by the Act from February 1, 2001, through the date of the ALJ's decision. (R. at 15, 23.) Shanley appealed the ALJ's decision to the Social Security Appeals Council ("Appeals Council"), and on March 6, 2007, the Appeals Council denied Shanley's request for review of the ALJ's decision. (R. at 4-7.) Accordingly, the ALJ's decision became the Commissioner's final decision. On May 10, 2007, Shanley filed the present lawsuit in this court, seeking judicial review of the ALJ's October 21, 2006 decision.

B.  Medical History

Shanley's relevant physical and mental health problems began

in 2001. On February 26, 2001, Shanley was admitted to The Regional Medical Center ("The Med") for a Tylenol overdose resulting from a second attempted suicide. (R. at 94.) Upon his admission to The Med, Shanley reported a three day history of nausea and vomiting. (R. at 95.) He also admitted to a six month history of crack abuse which caused him to lose his job in December of 2000, after which he made his initial attempt to kill himself. (*Id.*) Shanley was on no medication at the time of his February 2001 admission to The Med and was diagnosed with Tylenol overdose, suicidal ideation, polysubstance abuse, major depressive disorder, acute hepatic toxicity, and NSAID gastropathy. (*Id.*) After his overall condition improved, Shanley was discharged on March 2, 2001. (R. at 95-96.)

Following a long removal from medical care, on April 14, 2005, Shanley went to Memphis Medical Specialists and received a consultative examination from Dr. Michelle Allmon. (R. at 98.) He was complaining of right upper quadrant pain that had persisted for about two months, intermittent nausea and vomiting, liver disease, exertional chest pain, and tightness on his left side. (*Id.*) Dr. Allmon noted that Shanley was mobile without difficulty and that his chest was clear to auscultation bilaterally with equal expansion. (R. at 99.) She also noted that his heart rate and rhythm were regular, his range of motion in all joints was normal, and his neurological examination was normal. (*Id.*) Dr. Allmon

concluded that Shanley's liver exam was not palpable, he had no distention to suggest ascites or any other signs of cirrhosis, the etiology of his chest pain was unclear, and he did not appear to have any impairment-related limitations. (R. at 100.) Additionally, on April 28, 2005, Shanley received an examination from a DDS medical consultant, concluding that he had no medically determinable physical impairment. (R. at 101.)

On May 26, 2005, Shanley underwent a psychological consultative examination with Michael Guinle, Ph.D. (R. at 102-07.) Shanley complained of depression and his belief that his liver disease was a result of his Tylenol overdose in 2001. (R. at 102.) He stated that he had overdosed again four months prior to his examination, and he was placed in St. Francis hospital, where he stated he was told about his liver disease. (R. at 102-03.) He was taking no medications at the time of this exam, and he had not received follow-up care after his hospitalization at St. Francis. (R. at 103.) Shanley admitted to past use of marijuana and alcohol, but he stated that he only currently smoked one or two "joints" a day and did not use alcohol anymore. (*Id.*) Dr. Guinle noted that Shanley has a "loss of control over his use of chemicals." (*Id.*) Shanley reported that he felt anxious and remorseful regarding his previous behavior and its effects on his family. (*Id.*) He acknowledged suffering from depression but claimed not to be suicidal. (*Id.*) He claimed to have impaired

sleep and little energy, but his appetite was adequate. (*Id.*) Dr. Guinle noted that Shanley exhibited signs of depression such as mild dysphoria and statements of regret and remorse. (*Id.*) Shanley denied memory difficulty, suffering from any hallucinations, or feeling paranoid, except to mention that he felt others had conspired against him in certain past jobs. (*Id.*)

When asked about his daily activities during the examination with Dr. Guinle, Shanley stated that his wife works and supports the family. (R. at 104-05.) Shanley stated that he helps with the cooking and supervision of the children, but he mostly spends his time sitting at home either watching television or taking care of the children. (*Id.*) During the mental examination, Dr. Guinle noted that Shanley showed good contact and interacted appropriately, his affect was appropriate and congruent with his thoughts, his judgment was intact, and that he was alert and oriented in all spheres. (R. at 105.) Dr. Guinle concluded that Shanley seemed to be suffering from "a case of significant polysubstance abuse which [was] never successfully treated," which, with appropriate treatment and rehabilitation, he could be expected to recover from and lead a relatively normal life within 90 to 180 days. (R. at 106.) He further concluded that Shanley showed "no difficulty in his ability to understand, remember, concentrate, and persist on a psychological basis." (*Id.*) Dr. Guinle ended by noting that Shanley's social interaction would show mild or

5

moderate impairments as a result of his polysubstance abuse and that Shanley was capable of managing his own funds. (*Id.*)

On June 20, 2005, Brad Williams, a DDS physician, completed a Psychiatric Review Technique Form on Shanley. (R. at 108-21.) The form concluded that Shanley's impairments were not severe based on consideration of his personality and substance addiction disorders. (R. at 108.) When rating Shanley's functional limitations, Dr. Williams found him to have mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (R. at 118.) In making these findings, Dr. Williams also noted Shanley's six month use of crack cocaine which caused him to lose his job and his daily use of marijuana. (R. at 120.)

The remainder of Shanley's medical records relate to his treatment at the UT Medical Group Psychiatry Department ("UT Medical"). (R. at 122-35.) Shanley initially sought treatment at UT Medical on September 12, 2005, complaining of depressed mood, thoughts of hopelessness, and feelings of dysphoria. (R. at 135.) During his visit on September 27, 2005, he admitted to recent crack use and episodic non-compliance with his medication requirements. (*Id.*) It was noted that he was on Wellbutrin XL 150mg, was friendly and cooperative, had a clear thought process, did not have hallucinations or suicidal thoughts, and exhibited good insight and judgment. (*Id.*) Shanley was diagnosed with an unspecified mood

disorder, THC use, and a history of polysubstance abuse. (*Id.*) Substance induced major depression was ruled out, and he was given a GAF score of 55. (*Id.*) During subsequent visits on October 27, 2005, and March 13 and April 19, 2006, his GAF score was again noted as 55.[1] (R. at 130, 133-34.)

Shanley returned for another visit to UT Medical on July 18, 2006. (R. at 124-27.) He continued to state that his mood is depressed on more days than not. (R. at 124.) He stated that he has always experienced poor sleep. (R. at 125.) Shanley also denied any further suicidal thoughts, worrying, panic attacks, or phobias. (*Id.*) He once again admitted his previous use of marijuana, alcohol, crystal meth, and cocaine. (*Id.*) He complained of shoulder pain and stated that he knew his heart was not good. (*Id.*) The attending physician noted that Shanley was alert and fully oriented and appeared clam and comfortable. (R. at 126.) It was also noted that no specific time could be pinpointed as the beginning of his depression, despite his chronicity of hopelessness. (*Id.*) He was diagnosed with cocaine abuse in remission, THC use, cluster B traits (antisocial and borderline), chronic hopelessness, and given a GAF score of 55-60. (*Id.*) On July 19, 2006, it was noted in Shanley's file that he stated he had been on Wellbutrin but gave it up after it caused him to become

---

[1] The majority of the information on the March 13 and April 19 entries, along with the entire entry from a visit on May 10, 2006, is illegible.

7

nauseated. (R. at 122.) For treatment goals, Shanley was advised to refrain from using marijuana and to adhere to his medication schedule. (R. at 123.)

C. <u>The ALJ's Decision</u>

Using the five-step disability analysis,[2] the ALJ ruled that Shanley was not under a disability as defined by the Act at any relevant time after February 1, 2001, through the date of his decision. (R. at 15-23.) He determined that Shanley had the medically determinable impairments of cocaine abuse in remission and anti-social personality disorder. (R. at 17.) In not finding any further mental impairments, the ALJ took notice of the total lack of medical records evidencing any treatment for over a four and a half year period from 2001 to 2005. (R. at 18.) He found

---

[2] Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. 20 C.F.R. § 404.1520(c). Second, a finding must be made that the claimant suffers from a severe impairment. Id. Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. 20 C.F.R. § 404.1520(e). If the ALJ finds the claimant unable to perform past relevant work, then, at the fifth step, the ALJ must discuss whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(f).

8

that Shanley would experience a "no more than slight" mental impairment if he received appropriate treatment for his polysubstance dependence. (R. at 19.) The ALJ did not find Shanley's subjective complaints of physical impairments to be credible because the record documented no treatment for physical complaints whatsoever. (R. at 19.) The ALJ noted the lack of treatment records for any problems dealing with liver disease, heart problems, and lung problems. (R. at 19-20.) As a result, the ALJ determined that Shanley did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R. at 20.) He did not find Shanley's statements about the intensity, persistence, and limiting effects of his symptoms to be credible. (R. at 21.) He gave the opinions of the medical consultants appropriate weight as non-examining medical sources. (R. at 22.) Lastly, because he determined that Shanley has no medically determinable physical impairments and only mild restrictions in mental functioning, the ALJ concluded that Shanley is capable of performing his past relevant work as a laborer. (*Id.*)

D. Evidence

During the hearing, the ALJ had Shanley's medical records, psychiatric and consultative examinations conducted by two different doctors, a DDS Medical Consultant analysis, a psychological evaluation, and a Psychiatric Review Technique Form

as completed by a DDS physician. (R. at 2.) During the hearing, the ALJ also received additional medical records regarding Shanley's treatment at UT Medical. (*Id.*) The above items completed the record.

In the request for review to the Appeals Council, additional evidence was supplied in the form of a Medical Source Statement of Ability to Do Work-Related Activities (Mental)(the "Medical Source Statement") from Dr. Donald Gallant dated January 12, 2007. The statement contains opinions on Shanley's ability to understand, remember, and carry out instructions and his ability to respond appropriately to others in a work environment. The Appeals Council did not consider the evidence in its determination, stating that the new evidence was about a time period subsequent to the ALJ's decision. (R. at 5.)

Shanley now argues that a remand for a new hearing by an ALJ is justified by this new evidence in the form of Dr. Gallant's Medical Source Statement.

## PROPOSED CONCLUSIONS OF LAW

A district court may not consider new evidence, first submitted to the Appeals Council, in deciding whether to affirm, modify, or reverse an ALJ's decision if the Appeals Council did not review the application on its merits. *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). It may, however, remand the case for an

administrative hearing in light of the new evidence. *Cline*, 96 F.3d at 148; *Cotton*, 2 F.3d at 696. That type of remand, commonly referred to as a "sentence six" remand, is made without making any substantive ruling as to the correctness of the Commissioner's decision and orders that additional evidence be taken before the Commissioner. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); see also 42 U.S.C. § 405(g). It is appropriate "when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).

Section 405(g) specifically requires that a claimant show that (1) new material evidence is available, and, (2) good cause exists for the failure to incorporate such evidence into a prior proceeding. 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Under the first requirement, evidence is "new" if it did not exist or was not available to the claimant at the time of the ALJ proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); see also *Finkelstein*, 496 U.S. at 626. The new evidence must not be cumulative of existing evidence in the record. *Pickard v. Commissioner*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002).

Here, the additional medical record is "new" because it did not exist nor was it available at the time of the ALJ's hearing.

In fact, both parties agree that the evidence is "new" because it was not previously in existence. (Appellee's Br. 14; Pl.-Appellant's Br. in Reply 4.) Also, the Medical Source Statement is not cumulative of existing evidence in the record. The ALJ noted in his decision that there was a lack any opinion from a treating or examining physician that indicated Shanley had any limitations greater than those determined in the ALJ's decision. (R. at 21.) Dr. Gallant is the chief psychiatrist at UT Medical (*see* Pl.-Appellant's Br. in Supp. 13), where Shanley underwent significant treatment, and his Medical Source Statement offers an opinion on Shanley's mental limitations' effects on his ability to do work-related activities. Accordingly, the Medical Source Statement is new evidence regarding the existence and severity of Shanley's mental impairments.

The new evidence must also be "material" if it is to be the basis of a sentence six remand. *See* 42 U.S.C. § 405(g). New evidence is "material" if there is a reasonable probability of a different disposition of the claim if the new evidence is presented. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The evidence must concern the claimant's condition during the time at issue before the ALJ. *Pickard*, 224 F. Supp. 2d at 1171; *see also Sizemore*, 865 F.2d at 712. Shanley contends that the Medical Source Statement materially relates to his mental condition and provides updated information regarding his

condition during the time which he was treated at UT Medical. (Pl.-Appellant's Br. in Reply 4.) He also points out that it contains specific work-related mental limitations that stemmed from his condition during his treatment at UT Medical. (*Id.*) The Commissioner contends, however, that the Medical Source Statement is immaterial because it does not relate to Shanley's condition on or before the ALJ's decision. (Appellee's Br. 14.) He also argues that there is not a reasonable probability that the ALJ would have reached a different disposition of Shanley's disability claim if presented with the evidence because the Medical Source Statement and the records from UT Medical do not indicate Dr. Gallant's treatment relationship with Shanley and would have thus been discredited as conclusory. (*Id.* at 14-15.)

Because the ALJ noted the absence of any opinion evidence from a treating source and found only mild mental impairments, the Medical Source Statement's detailed opinions and finding of some extreme mental impairments could impact the ALJ's decision. This evidence could also bolster the credibility of Shanley's other claims regarding his mental condition. The Medical Source Statement opines that Shanley's severe bipolar disorder, severe depression, impulsivity that is unresponsive to medication, and extreme paranoid behavior may all have moderate to extreme effects on his ability to work. There is nothing in the statement to suggest that it is not based on the relevant time period for which

Shanley underwent treatment at UT Medical, and Dr. Gallant, as the chief psychiatrist, would most likely be familiar with Shanley's case. As such, the Medical Source Statement provides opinion evidence that the ALJ specifically referred to as lacking and could easily impact his decision. Accordingly, the Medical Source Statement evidence is material because there is a reasonable probability that the claim may be decided differently with this evidence.

Finally, the Sixth Circuit requires that a claimant prove the "good cause" requirement by showing a reasonable justification for not acquiring prior to, or presenting the evidence at, the ALJ hearing. *Foster*, 279 F.3d at 357; *Willis*, 727 F.2d at 554. Shanley argues that it was beyond his control that the Medical Source Statement was not completed until January 12, 2007. (Pl.-Appellant's Br. in Reply 4.) He states that he informed the ALJ at the hearing that he was attempting to obtain the Medical Source Statement to submit along with the records from UT Medical. (*Id.*) The Commissioner conclusively claims, however, that Shanley has not shown good cause for failing to obtain and present the Medical Source Statement at the hearing before the ALJ. (Appellee's Br. 15.)

Here, Shanley informed the ALJ at the hearing that he was trying to obtain the additional evidence from UT Medical. (Pl.-Appellant's Br. in Reply 4.) The records from UT Medical continue

up through July 18, 2006, which is only a short time before the August 31, 2006, hearing before the ALJ. Had the Medical Source Statement already existed as part of those records, there would be no good cause for failing to produce it. When, as is the case here, Shanley was dependent on Dr. Gallant to create the Medical Source Statement, he cannot be held responsible for the requisite delays in its production. Indeed, in a letter dated December 20, 2006, Shanley informed the Appeals Council that he was still waiting on the new evidence to become available. (R. at 145-47.) After receiving the evidence, Shanley submitted it on February 14, 2007. (Pl.-Appellant's Br. in Reply 4.) Therefore, Shanley was justified in not submitting the evidence during the ALJ's hearing, and it is submitted that he has shown good cause for not incorporating the new evidence into both the UT Medical and hearing records.

## CONCLUSION

For the foregoing reasons, it is recommended that the claim be remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g).

RESPECTFULLY SUBMITTED this 12th day of March, 2008.

    s/ Diane K. Vescovo
    DIANE K. VESCOVO
    UNITED STATES MAGISTRATE JUDGE